IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

AMY K.Z. CATLETT,

               Plaintiff,

    v.

NEW JERSEY STATE POLICE, et al.,

               Defendants.

HON. JEROME B. SIMANDLE

Civil No. 12-153 (JBS/AMD)

**MEMORANDUM OPINION**

**SIMANDLE**, Chief Judge:

       This matter involves a series of constitutional and common law torts that Plaintiff alleges were committed against her on November 21, 2009, by a collection of state and municipal police officers, the New Jersey State Police, the Vineland Police Department, and several EMTs, a Nurse, a Doctor, and other unidentified individuals.  The action is before the Court on three motions: the motion of Defendant New Jersey State Police to dismiss for failure to state a claim and for summary judgment [Docket Item 8]; Plaintiff's motion for leave to file an amended complaint [Docket Item 14]; and Defendant Dr. Dominic Diorio, M.D.'s motion to dismiss [Docket Item 20]. THE COURT FINDS AS FOLLOWS:

       1.  Plaintiff alleges that in the early morning hours of November 21, 2009, she was arrested and detained by unidentified officers of the Defendant New Jersey State Police in connection

with an unspecified motor vehicle offense.  Compl. ¶ 4.  She alleges that she was detained by the officers longer than necessary, including for some unspecified period of time after they had decided not to charge her with the offense, but that she was released from custody while it was still in the "early morning hours."  Id. ¶¶ 5-10.

2.   Then, approximately twelve hours later, in the afternoon of the same day, Plaintiff alleges that a state trooper ("Trooper Scott") received an anonymous tip that Plaintiff had threatened to harm herself on an internet site, and that Trooper Scott passed on this information to an individual working for Defendant Vineland Police Department.  Id. ¶ 13.  In response, Plaintiff alleges, some (unidentified) Vineland police officers and Vineland EMTs arrived at her house, "removed [her] from her home and forced [her] to go to [Defendant] South Jersey Healthcare-Regional Medical Center in Vineland. . ."  Id. ¶ 14.  While there, Plaintiff alleges that she was forcibly restrained and physically injured by Defendant Nurse Diane Stavoli, apparently on the orders of Defendant Dr. Diorio, and was provided care that she alleges was inappropriate in certain unspecified ways.  Id. ¶¶ 14, 38-43.  She was eventually discharged that same evening. Id. ¶ 18.

3.   Plaintiff seeks compensatory and punitive damages from all Defendants for violations of her rights guaranteed under the

United States and New Jersey constitutions, and for common law torts, under several different direct and vicarious theories of liability.  Plaintiff's Complaint seeks relief through nine counts.

4.   Count One seeks damages from Defendant New Jersey State Police and several John Doe officers for her allegedly unlawful detention in the early morning hours of November 21, 2009.  Count Two seeks damages from all defendants for her allegedly unlawful removal from her house, restraint at South Jersey Healthcare, and injurious care in the afternoon and evening of November 21, 2009. Count Three seeks damages from Defendant New Jersey State Police and John Doe officers under various theories of negligent hiring procedures, failure to train and failure to supervise its officers.  The first three counts are the only ones that implicate Defendant New Jersey State Police.

5.   Count Four seeks damages under the same negligent hiring and failure to train theories against Defendant Vineland Police Department.  Count Five seeks damages under the same theories against Defendant Vineland EMS.  Count Six seeks damages from Defendants Vineland Police Department, Vineland EMS, South Jersey Healthcare, Dr. Diorio, Nurse Stavoli, and various unidentified individuals for Plaintiff's alleged physical and emotional injuries resulting from her treatment at the South Jersey Healthcare-Regional Medical Center in Vineland.  Count Seven

3

seeks punitive damages against the medical Defendants for the
allegedly intentional infliction of severe mental and emotional
distress and physical pain on Plaintiff.  Count Eight seeks
damages from the medical Defendants for malpractice.  Count Nine
seeks damages from Defendant South Jersey Healthcare under
theories of negligent hire, failure to train, and failure to
supervise.

6.  Plaintiff initially filed her Complaint in the Superior
Court of New Jersey, Cumberland County Law Division under Docket
Number L-1065-11 on November 21, 2011.  The action was
subsequently removed to this Court by two different Defendants.[1]

7.  Defendant New Jersey State Police (hereafter, "NJSP")
has moved to dismiss and for summary judgment as to all claims
against itself.  [Docket Item 8.]  Plaintiff seeks damages from
NJSP in Counts 1, 2 and 3 of the Complaint.  Plaintiff alleges
that Defendant NJSP is liable for her emotional and physical
injuries suffered both in the early morning and afternoon of
November 21, 2009 under theories of direct and vicarious
liability for violations of constitutional and common law rights.
Defendant NJSP argues that these claims should be dismissed for

-------

[1] Defendants South Jersey Healthcare and Diane Stavoli
initially removed the action on January 9, 2012, creating the
instant Docket, Civil No. 12-153; Defendants Vineland Police
Department and Vineland EMS subsequently removed the action to
this Court on January 10, 2012, creating a separate Docket, Civil
No. 12-158.  The Court, on January 13, 2012, consolidated the two
actions under the instant civil docket.  [Docket Item 4.]

several reasons.

8.   First, Defendant NJSP argues that Plaintiff cannot seek
damages against it for violations of federal or state
constitutional rights under 42 U.S.C. § 1983 or the New Jersey
Civil Rights Act, N.J. Stat. Ann. § 10:6-2(c), because Defendant
NJSP is not a "person" under either statute.  Plaintiff concedes
this point in her opposition brief.  Therefore, the Court will
dismiss all constitutional claims against Defendant NJSP.

9.   Next, as to Plaintiff's common law tort claims against
Defendant NJSP, Defendant argues that Plaintiff's claims against
it alleged in Count One of the Complaint, regarding her alleged
extended detention in the early morning hours of November 21,
2009, should be dismissed because Plaintiff only alleges
emotional injuries rather than economic injuries, and therefore
do not meet the required injury threshold as required under the
New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:9-2(d).
Plaintiff also concedes this point, so the Court will likewise
dismiss Plaintiff's claims against Defendant NJSP alleged in
Count One of the Complaint.

10.  Next, as to Plaintiff's common law tort claims against
NJSP in Count Two, regarding the transmission of the anonymous
tip to the Vineland Police Department (and Plaintiff's subsequent
injuries in the afternoon), Defendant NJSP argues that summary
judgment should be entered against Plaintiff's claim because she

5

did not file a notice of claim regarding the facts alleged in this count, as required under the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:8-3.  Defendant argues that while Plaintiff did file a notice of claim against Defendant NJSP,[2] it only described her claims of unlawful detention in the early morning hours of November 21, 2009, and did not address her separate claims against Defendant NJSP and the other Defendants arising from her alleged restraint and mistreatment in the afternoon and evening of the same day.  Plaintiff opposes entry of summary judgment on this point.

11.  Plaintiff argues that her notice of claim is adequate because it sufficiently put Defendant NJSP on notice of her claims against it.  Further, Plaintiff argues that she should be forgiven for failing to file any notice of claim specifically regarding the afternoon incidents because she was not aware of the involvement of NJSP "Trooper Scott" in those events at the time that she filed her notice of claim.

12.  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Where the nonmoving party bears the burden of

---

[2] Defendant NJSP attaches a copy of Plaintiff's notice of claim, which was filed on February 17, 2010, as Exhibit A to the Declaration of Peter Ramos in support of Defendant's motion for summary judgment.

persuasion at trial, the moving party may be entitled to summary judgment merely by showing that there is an absence of evidence to support an essential element of the nonmoving party's case. Fed. R. Civ. P. 56(c)(1)(B); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).

13.    In this case, to survive summary judgment, Plaintiff must demonstrate that a dispute of fact exists in the record over whether she filed a sufficient notice of claim regarding her claims in Count Two.  She has failed to do so.  The Court finds that Plaintiff's notice of claim, filed on February 17, 2010, failed to meet the statutory requirement of a notice of claim. The New Jersey Tort Claims Act explicitly requires that Plaintiff's notice of claim state "[t]he date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted" and provide "[a] general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim."  N.J. Stat. Ann. § 59:8-4(c)-(d).

14.    Plaintiff's notice of claim satisfies this requirement only as to claims arising from her arrest and detention in the early morning of November 21, 2009.  Plaintiff's notice described the "occurrence or accident which gave rise to [her] claim" as taking place at 1:17 a.m. in Fairfield and Bridgeton, and the "exact location of the occurrence" as being "Route 49 and State

Police Barracks." Ramos Decl. Ex. A. Further, Plaintiff's narrative description of the events involve only her allegations regarding her arrest and detention by NJSP Troopers on suspicion of various motor vehicle charges, which are solely the subject of Count One of Plaintiff's Complaint. The notice of claim gives no notice regarding Plaintiff's alleged injuries in the afternoon of that day at her house and at the hospital. Thus, the Court finds that Plaintiff's notice of claim does not meet the requirements of the Tort Claims Act for any claim arising in the afternoon of November 21, 2009, when such claims are not alleged to be related to the events of the early morning of the same day involving the motor vehicle stop and detention.

15. Secondly, the fact that Plaintiff was unaware of the alleged involvement of "Trooper Scott" on that afternoon does not save her from the requirement. The Tort Claims Act requires Plaintiff to file a notice of claim within 90 days of the "accrual of the cause of action." N.J. Stat. Ann. § 59:8-8. Under New Jersey law, a cause of action accrues when the plaintiff is aware of both the fact that she has been injured and that another may be at fault. Martinez v. Cooper Hosp.-Univ. Med. Ctr., 163 N.J. 45, 52 (2000). In this case, Plaintiff was both aware of any potential injuries she suffered on the afternoon of November 21, 2009 as they happened, and was likewise aware that another may be at fault, such as the Vineland Police

8

Officers, EMTs, nurses, and doctors that she believes violated
her rights.  That she has subsequently discovered that an officer
of the NJSP may have also been involved does not toll the date of
the accrual of her cause of action in this case.  Therefore, the
Court will grant Defendant NJSP's motion for summary judgment
against Plaintiff's claims against it in Count Two of the
Complaint.

16.  Defendant NJSP finally also argues that the Court
should dismiss Plaintiff's claims against it under Count Three
for failure to allege sufficient facts to plausibly state a cause
of action.  Plaintiff concedes this point, so the Court will
additionally grant Defendant NJSP's motion to dismiss Plaintiff's
Claims against it in Count Three of the Complaint.

17.  The Court turns next to Plaintiff's motion for leave to
file an amended complaint.  [Docket Item 14.]  Plaintiff seeks
the Court's leave to file an amended complaint, so that she can
add individual defendant NJSP officers, Vineland Police Officers,
and Vineland EMT employees, pursuant to Fed. R. Civ. P. 15(a)(2).
Plaintiff attaches a proposed amended complaint to her motion
that includes the names and badge numbers of these new proposed
defendants.  However, as Defendant NJSP argues in opposition, the
proposed amended complaint also includes all the same claims
against Defendant NJSP that it argues, and the Court has just
held, are subject to dismissal or summary judgment in Counts One,

Two and Three.  Therefore, Defendant NJSP opposes granting the
motion for leave to amend on the grounds of futility.

    18.  Federal Rule of Civil Procedure 15(a)(2) provides that,
under the present circumstances, "a party may amend [its]
pleading only with the opposing party's written consent or the
court's leave.  The court should freely give leave when justice
so requires."  Reasons to deny amendment include "undue delay,
bad faith or dilatory motive on the part of the movant, repeated
failure to cure deficiencies by amendments previously allowed,
undue prejudice to the opposing party by virtue of allowance of
the amendment, [and] futility of amendment. . ."  Foman v.
Davis, 371 U.S. 178, 182 (1962).  In this case, the Court agrees
with Defendant NJSP that Plaintiff's proposed amended complaint
would be futile as it is currently proposed because it continues
to assert claims against Defendant NJSP when the Court has held
that such claims are subject to dismissal or summary judgment.
Therefore, the Court will deny Plaintiff's motion for leave to
file an amended complaint without prejudice to Plaintiff filing a
renewed motion with a proposed amended complaint that cures this
futility by removing claims against Defendant NJSP.[3]

_____

    [3] Subsequent to her motion for leave to file an amended
complaint, Plaintiff filed a second proposed amended complaint,
which proposes to add new claims against certain medical
Defendants.  [Docket Item 17.]  Because Plaintiff's second
proposed amended complaint suffers from the same infirmities as
her first proposed amended complaint, the Court will likewise
deny her informal application to file another amended complaint.

10

19.   Finally, the Court turns to the motion to dismiss filed
by Defendant Diorio.   [Docket Item 20.]   Defendant Diorio seeks
dismissal of all common law claims against him pursuant to the
Affidavit of Merit Statute, N.J. Stat. Ann § 2A:53A-26.
Defendant argues that the affidavit of merit produced by
Plaintiff is invalid because the affidavit was signed by the
affiant's spouse rather than by the affiant himself.   The Court
finds that, under these unique circumstances, Plaintiff has
demonstrated substantial compliance with the Affidavit of Merit
Statute and will, consequently, deny Defendant's motion.

20.   The record demonstrates (and the parties do not
dispute) that Plaintiff has produced to Defendant Diorio two
separate documents purporting to satisfy the Affidavit of Merit
Statute.   The first document, dated January 18, 2012, is a
notarized document from Dr. Gary B. Whitman, M.D., which lacks
certain factual assertions required under the statute, and does
not purport to be asserted under oath.   Def.'s Ex. C. The January
18 affidavit bears the printed name of "Gary B. Whitman" in the
signature line.   The second document, which Plaintiff produced
after Defendant identified certain insufficiencies in the first,
is dated April 22, 2012.   Def.'s Ex. E.   This affidavit includes
more factual content, purports to be declared under oath, but
bears a signature that is illegible next to which is the notation
"(Spouse)".   Defendant Diorio moves to dismiss Plaintiff's common

11

law claims as to him on the grounds that neither of these affidavits are compliant with the requirements of the Affidavit of Merit Statute; the first lacks sufficient factual content and the second (and, Defendant has subsequently learned, the first) lacks the affiant's own signature.

21.  In opposition, Plaintiff explains (and provides signed documentation to support such explanation) that her expert affiant, Dr. Witman, has recently suffered a permanent spinal injury that prevents him from being able to physically sign his own name, but that his wife has been declared his power of attorney and signs all legal documents for him.  Catlett Cert. ¶ 4 and Ex. A.  Plaintiff therefore argues that even if her April 22 affidavit is not technically compliant with the requirements of the Affidavit of Merit Statute, it satisfies the statute under the doctrine of substantial compliance.

22.  The Affidavit of Merit Statute requires that in cases seeking damages for professional negligence or malpractice, the plaintiff must, within 60 days following the filing of an answer, provide the defendant with "an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices."  N.J. Stat. Ann. § 2A:53A-27.  In this

case, Defendant Diorio argues that the document produced on April
22 does not satisfy this requirement because it is not an
"affidavit" because it was signed by the affiant's wife rather
than the affiant himself.

23.  Defendant asserts, without supporting authority, that
Dr. Whitman's statement does not qualify as an "affidavit" within
the meaning of § 2A:53A-27 because it was signed by the affiant's
wife rather than by the affiant.  Neither party cites any
authority for what formalities are required to constitute an
affidavit under New Jersey law, and under what circumstances a
spouse or power of attorney can sign for a paralyzed affiant.
The Court therefore assumes without deciding that Dr. Whitman's
April 22 document fails to meet the technical definition of an
"affidavit" under the statute.  However, the Court concludes that
Plaintiff has substantially complied with the statute and will
deny Defendant's motion.

24.  The New Jersey Supreme Court has held that the
equitable doctrine of substantial compliance is appropriate in
certain circumstances, like this, where a plaintiff has satisfied
the purposes of the affidavit of merit statute without meeting
full technical compliance.  The purpose of the substantial
compliance doctrine "is to avoid the harsh consequences that flow
from technically inadequate actions that nonetheless meet a
statute's underlying purpose.  It is a doctrine based on justice

and fairness, designed to avoid technical rejection of legitimate claims." Galik v. Clara Maas Med. Ctr., 167 N.J. 341, 352 (2001) (internal citation omitted). Defendant incorrectly states that "equitable considerations such as substantial compliance are not a defense to motions to dismiss for failure to comply with the Affidavit of Merit Statute." To the contrary, the New Jersey Supreme Court has approved "the invocation of substantial compliance in any [affidavit of merit] case in which the elements of the [substantial compliance] doctrine are satisfied without regard to the nature of the underlying report." Galik, 167 N.J. at 355. Thus, the Court is directed to consider whether the particular case before it satisfies the elements of substantial compliance and, if it does, to waive strict technical compliance with the affidavit of merit statute.

25.  The elements of substantial compliance are:

> (1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim, and (5) a reasonable explanation why there was not a strict compliance with the statute.

Galik, 167 N.J. at 353 (quoting Bernstein v. Board of Trustees of the Teachers' Pension and Annuity Fund, 151 N.J. Super. 71, 76-77 (App. Div. 1977)).

26.  The Court concludes that Plaintiff has satisfied these elements. Defendant can point to no prejudice caused by Dr.

14

Whitman's wife having signed the affidavit rather than Dr. Whitman - the content of the affidavit is itself the same (and Defendant apparently has no quarrel with the content of the April 22 document). Plaintiff has attempted to supply a compliant affidavit twice, and has, subsequent to producing the April 22 document, procured documents from Dr. Whitman and the notary regarding the circumstances of the signing of the document. As Defendant apparently has no complaint regarding the content of the April 22 document itself, it would seem that the statement of Dr. Whitman regarding the validity of Plaintiff's malpractice and negligence claims have met with the purpose of the statute, which is to require an expert to certify to the merit of a medical tort claim at the start of litigation to weed out meritless claims. Whether Plaintiff's medical malpractice claims have merit is not for the Court to determine at this time, but Plaintiff has apparently found a doctor who has sworn before a notary to the merit of those claims. Plaintiff has therefore satisfied the purpose of the statute. Defendant has, apparently, sufficient notice of Plaintiff's claims, as Defendant has not argued that the substance of the affidavit is insufficiently specific. And Plaintiff has provided the Court with adequate explanation for why her affidavit is not technically compliant. The Court will permit Plaintiff the benefit of the doubt in failing to notice that Dr. Whitman's original signature line was not properly

15

signed, and not ascribe a bad faith motive to her actions, as Defendant asks the Court to do.

27.   Accordingly, the Court finds that Plaintiff's April 22 document is substantially compliant with the Affidavit of Merit statute, and will therefore deny Defendant Diorio's motion to dismiss.

28.   The accompanying Order will be entered.


**August 28, 2012**                         **s/ Jerome B. Simandle**
Date                                     JEROME B. SIMANDLE
                                         Chief U.S. District Judge

16