```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| AMY K.Z. CATLETT,          :<br>                            :<br>            Plaintiff,     :<br>                            :<br>    v.                      :<br>                            :<br>NEW JERSEY STATE POLICE, et :<br>al.,                        :<br>                            :<br>            Defendants.     :<br>                            : | HON. JEROME B. SIMANDLE<br><br>Civil No. 12-153 (JBS/AMD)<br><br><br><u>**OPINION**</u> |

APPEARANCES:

Ms. Amy K.Z. Catlett
3137 Swan Drive
Vineland, NJ 08361
    Plaintiff Pro Se

Mark A. Petraske, Esq.
BUCKLEY THEROUX KLINE & PETRASKE, LLC
932 State Road
Princeton, NJ 08540
    Attorney for Defendant Diorio

Michael G. Halpin, Esq.
GROSSMAN & HEAVEY
1608 Highway 88 West, Suite 200
Brick, NJ 08721
    Attorney for Defendants Stavoli and South Jersey Healthcare


**SIMANDLE**, Chief Judge:

**I.  Introduction**

    Plaintiff Amy K.Z. Catlett, pro se, brings this suit alleging a series of constitutional and common law tort claims against state and municipal police officers, emergency medical technicians ("EMTs"), a nurse, a doctor, a medical center, and other unidentified individuals. Plaintiff claims that she was

tortiously and unconstitutionally detained by police and medical professionals and was administered unwanted medical treatment upon suspicion that she was suicidal. Before the Court is a motion to dismiss by Defendant Dominic Diorio, M.D. [Docket Item 29], which is joined by Defendants Diane Stavoli, LPN, and South Jersey Healthcare, who rely primarily on Dr. Diorio's submissions. [Docket Item 34.] Plaintiff Catlett opposes the motions and moves to amend the Complaint. [Docket Item 41.]

The key inquiries for the Court are (1) whether Plaintiff sufficiently pleads that Defendant Diorio acted under color of state law, (2) whether New Jersey law immunizes Dr. Diorio from liability for state-law tort claims, and (3) whether Plaintiff's proposed Amended Complaint cures deficiencies noted by this Court. For the reasons explained below, the Court will grant the motion to dismiss in part and deny without prejudice in part, and deny without prejudice Plaintiff's motion to amend.

**II. Background**

   **A. Facts**

The facts of this case and all of Plaintiff's claims were summarized in this Court's previous Opinion[1] and will be recounted only as necessary to decide the present motions.

In the afternoon on November 21, 2009, a state trooper

---

[1] Catlett v. New Jersey State Police, No. 12-153, 2012 WL 3757005, at *1-*2 (D.N.J. Aug. 28, 2012). See also Docket Item 30.

received an anonymous tip that Plaintiff had posted a suicidal message on the social networking website, Facebook. [Compl. ¶¶ 2, 13.] Vineland police officers and Vineland EMTs went to Plaintiff's residence and delivered her to the South Jersey Healthcare Regional Medical Center ("SJRMC"), believing that she was suicidal. [Id. ¶¶ 13-14.] Plaintiff asserts the anonymous tip as to her alleged suicidal posting was "baseless and wrongfully . . . conveyed" to local police and medical personnel. [Id. ¶ 14.] Plaintiff asserts that she acted calmly and peaceably at all times, but that Defendant Diorio nonetheless ordered nurse Defendant Stavoli and others to "forcibly retrain[]" her.[2] [Id. ¶¶ 39-42.] Plaintiff asserts that Nurse Stavoli "was particularly overzealous" and, while restraining her, "caus[ed] injury to Plaintiff's mouth and left shoulder . . . ." [Id. ¶ 43.] At some point, Plaintiff was transferred to "the Bridgeton facility" for further assessment or treatment.[3] [Id. ¶ 38.] Plaintiff asserts she was "released . . . during the late evening hours . . . ." [Id. ¶ 18.]

---

[2] "[I]t is upon information and belief that Defendant Dominic Diorio, M.D. ultimately ordered that Plaintiff be physically restrained." [Id. ¶ 41.]

[3] Defendant Diorio, in his motion to dismiss, clarifies that Plaintiff was sent to the "Crisis unit at the Bridgeton location of South Jersey Health System." [Def. Mot. Br. at 13.] Plaintiff asserts that at the Bridgeton facility she met with "appropriately trained individuals" who assessed her "status." [Compl. ¶ 38.]

3

**B. Complaint & procedural history**

Plaintiff contends that, as a result of the incident, she suffered physically and mentally, sustained "temporary and permanent injuries, . . . [and] a loss of earnings and earning capacity," among other damages. [Id. ¶ 44.] The Complaint names Defendant Diorio in several counts. Count Six seeks damages from Dr. Diorio, Nurse Stavoli and South Jersey Healthcare, among other Defendants, for alleged injuries resulting from her treatment at the South Jersey Healthcare Regional Medical Center in Vineland. [Id. ¶¶ 37-44.] Count Seven seeks punitive damages against the medical Defendants for intentional infliction of severe mental and emotional distress and physical pain. [Id. ¶¶ 45-46.] Count Eight seeks damages from the medical Defendants for malpractice. [Id. ¶¶ 47-55.] Count Nine seeks damages from South Jersey Healthcare under theories of negligent hiring, training and supervision. [Id. ¶¶ 56-60.]

Defendant New Jersey State Police ("NJSP") first moved for dismissal and summary judgment, which the Court granted, terminating the NJSP from the suit. Catlett, 2012 WL 3757005, at *2-*4. The Court denied without prejudice Plaintiff's motion for leave to file an amended complaint, because the proposed amended complaint repeated the deficient claims against Defendant NJSP. Id. at *4. The Court noted that Plaintiff could file a renewed motion with a proposed amended complaint that removed those

4

futile claims. Id. Plaintiff did not so move until opposing Defendant Diorio's present motion.

The Court denied Defendant Diorio's first motion to dismiss all common law claims against him. [Docket Item 20.] Dr. Diorio argued that the affidavit of merit produced by Plaintiff was invalid because it was signed by the affiant's spouse rather than the affiant himself, but the Court found that Plaintiff's affidavit substantially complied with the Affidavit of Merit statute. Catlett, 2012 WL 3757005, at *6.

Defendant Diorio now brings this second motion to dismiss for failure to state a claim, under Fed. R. Civ. P. 12(b)(6). [Docket Item 29.] He argues two points: (1) the Complaint fails to plead that Dr. Diorio was acting under color of state law, and therefore the constitutional claims against him should be dismissed, and (2) New Jersey law immunizes medical providers from tort liability when they protect or commit emotionally disturbed persons who threaten to harm themselves or others. [Def. Mot. Br. at 14-15.] Defendants Stavoli and South Jersey Healthcare "join[] in the notice of motion" filed by Dr. Diorio, arguing (1) that all claims for vicarious liability against South Jersey Healthcare must be dismissed if the underlying claims against Dr. Diorio are dismissed and (2) that South Jersey Regional Medical Center is not a state actor, for purposes of civil rights claims. [Docket Item 34.] Plaintiff opposes the

5

motions and files a cross-motion to amend the complaint. [Docket Item 41.]

## III.  Standard of review

Under Fed. R. Civ. P. 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012). The complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Allegations that are no more than legal conclusions are not entitled to the same assumption of truth. Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012). To determine if a complaint meets the pleading standard, the Court must strip away conclusory statements and "look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." Id. (internal quotation marks omitted).

A trial court has the discretion to consider evidence outside the complaint in ruling on a motion to dismiss, but if

the court does not exclude the outside matters, the motion generally should be considered one as under Fed. R. Civ. P. 56 and determined in accordance with summary judgment principles. Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992). See also Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 559-60 (3d Cir. 2002) (stating that documents that are referred to in the plaintiff's complaint and are central to the claim are considered part of the pleading, even if not attached to the complaint).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**IV. Discussion**

    **A. Whether Dr. Diorio acted under color of state law**

To recover under 42 U.S.C. § 1983, a plaintiff must establish that the defendant acted under color of state law to deprive the plaintiff of a right guaranteed by the Constitution. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011). Similarly, to recover under the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-1, et seq., a plaintiff must show that she was deprived of rights secured by the constitution or laws of New Jersey, by a person "acting under color of law . . . ." § 10:6-2(c).

Defendant Diorio argues that any claims against him under § 1983 or the NJCRA must be dismissed because "plaintiff has not and cannot allege that Dr. Diorio or South Jersey Regional Medical Center were acting under color of law." [Def. Mot. Br. at 16.] Dr. Diorio asserts, and South Jersey Healthcare reiterates, that the SJRMC is a private, charitable institution, and therefore, neither Dr. Diorio nor South Jersey Healthcare are state actors. [Id.; Docket Item 34.] He urges the Court to dismiss all § 1983 and NJCRA claims against him.

Plaintiff appears to concede the point that the medical center is not a public hospital. Rather, she argues that Dr. Diorio acted under color of state law because "the police 'exercised coercive power or ... provided such significant encouragement, either overt or covert, that [Defendant Diorio's] choice [was] in law ... that of the State.'" [Pl. Opp'n at 2 (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 52 (1999)).]

The U.S. Supreme Court has stated that "a deed of an ostensibly private organization or individual is to be treated sometimes as if a State had caused it to be performed" but only if there exists such a "close nexus" between the State and the challenged action that the private behavior "may be fairly treated as that of the State itself." Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 296

8

(2001). Whether conduct is fairly attributable to the state "is a matter of normative judgment," but the Supreme Court explained: "We have treated a nominally private entity as a state actor when it is controlled by an 'agency of the State,' when it has been delegated a public function by the State, when it is 'entwined with governmental policies,' or when government is 'entwined in [its] management or control[.]'" Id. (citations omitted).

There is no basis for finding state action in this case. There are no factual allegations in the Complaint, nor does Plaintiff argue now, that Dr. Diorio or the Southern Jersey Healthcare is controlled by a state agency, or that the Defendants are "entwined" with governmental policies or that the government is entwined in the management or control of the medical center. Likewise, the medical center cannot be said to be a state actor simply because it performs services that benefit the public. See Zarebicki v. Devereux Found., No. 09-6205, 2011 WL 2582140, at *4 (E.D. Pa. June 30, 2011) (stating that in the Third Circuit "the delegation of a 'public function' to a private entity, without more, is insufficient to establish state action," citing Benn v. Universal Health Sys., Inc., 371 F.3d 165, 172 (3d Cir. 2004)); Cardio-Med. Assocs., Ltd. v. Crozer-Chester Med. Ctr., 536 F. Supp. 1065, 1091 n.37 (E.D. Pa. 1982) (holding that, although private hospitals perform a public function, they do not act under color of state law, and citing several federal district

9

and circuit court opinions in accordance with that conclusion).

The Complaint, fairly read in the light most favorable to Plaintiff, suggests that police and EMTs communicated to Dr. Diorio their suspicion that Plaintiff harbored suicidal thoughts, and Dr. Diorio allegedly responded by ordering her to be restrained temporarily before she was transferred to another facility for proper assessment or treatment. There are no factual allegations in the Complaint that plausibly suggest that the police or EMTs coerced, pressured, dictated or encouraged Dr. Diorio's treatment decisions in any way. The Complaint merely alleges that police and EMTs communicated information to Dr. Diorio to enable him to treat Plaintiff. Dr. Diorio's treatment decisions cannot fairly be attributed to the state itself.[4]

Therefore, all claims against Dr. Diorio under § 1983 or the NJCRA must be dismissed. Any claims against Defendants Stavoli or South Jersey Healthcare predicated upon them acting under color of state law must be dismissed as well.

### B. Whether New Jersey law immunizes Dr. Diorio from liability for state-law tort claims

---

[4] Defendant Diorio attaches several exhibits to his motion that contradict Plaintiff's factual account of November 21 and allegedly lend support to his assertion that he acted appropriately in treating Plaintiff. A motion to dismiss is not the proper vehicle to supply the Court with evidence outside of the pleadings. However, the Court need not convert this motion to one for summary judgment because the Court concludes, without considering any of Dr. Diorio's outside evidence, that he was not a state actor for purposes of § 1983 or the NJCRA.

Defendant Diorio argues that New Jersey law immunizes both medical practitioners who arrange for voluntary or involuntary commitment of a patient and those who are involved in the commitment process. [Def. Mot. Br. at 20.] Dr. Diorio first points to N.J. Stat. Ann. § 2A:62A-16(a), which states in relevant part:

> Any person who is licensed in the State of New Jersey to practice . . . medicine . . . is immune from any civil liability for a patient's violent act against another person or against himself unless the practitioner has incurred a duty to warn and protect the potential victim as set forth in subsection b. of this section and fails to discharge that duty as set forth in subsection c. of this section.

The duty to warn and protect is triggered in two circumstances:

> (1) The patient has communicated to that practitioner a threat of imminent, serious physical violence against a readily identifiable individual or against himself and the circumstances are such that a reasonable professional in the practitioner's area of expertise would believe the patient intended to carry out the threat; or
> (2) The circumstances are such that a reasonable professional in the practitioner's area of expertise would believe the patient intended to carry out an act of imminent, serious physical violence against a readily identifiable individual or against himself.

N.J. Stat. Ann. § 2A:62A-16(b). The licensed medical professional "shall discharge the duty to warn and protect" by arranging for the patient to be admitted voluntarily to a psychiatric unit or by initiating procedures for involuntary commitment, among other methods not relevant here. N.J. Stat. Ann. § 2A:62A-16(c)(1)-(2).

Dr. Diorio also points to N.J. Stat. Ann. § 30:4-27.7, which

states that a "law enforcement officer, screening service, outpatient treatment provider or short-term care facility designated staff person . . . acting in good faith . . . who takes reasonable steps to assess, take custody of, detain or transport an individual for the purposes of mental health assessment or treatment is immune from civil and criminal liability."

Defendant Diorio argues that Plaintiff has failed to plead facts that suggest these immunities do not apply to Dr. Diorio. [Def. Mot. Br. at 21.] He states that he took appropriate action to prevent harm to Plaintiff and others when acting on "reports from the patient and the police of statements of self-harm and where the patient attacked a nurse in the hospital." [Id.] Dr. Diorio concludes that the claim is frivolous and must be dismissed. [Id.]

The Complaint makes no mention of an alleged attack by Plaintiff against Nurse Stavoli, nor does it contain any statements by Plaintiff that show she threatened imminent, serious physical injury to herself or others. Plaintiff pleads, to the contrary, that all reports about her suicidal thoughts were "baseless" [Compl. ¶ 15] and that at all times she "act[ed] peaceably and in a lawful manner." [Compl. ¶ 16; see also id. ¶ 39.] The basis for Defendant Diorio's assertion of immunity

12

simply cannot be gleaned from the Complaint itself.[5]

Defendant Diorio attaches several exhibits to his motion to contradict Plaintiff's factual assertions and to demonstrate that Defendant acted reasonably in ordering Plaintiff's restraint,[6] but such evidence cannot be considered on a motion to dismiss, without converting the motion to one for summary judgment. These exhibits cannot be considered part of the pleadings because they are not integral to the Complaint and the Complaint does not rely on any police, EMT or medical reports. It is impossible to conclude, from the Complaint alone, that Defendant Diorio acted

---

[5] Defendant Diorio advances the curious argument that, because a grand jury indicted Plaintiff for causing injury to Nurse Stavoli [see Def. Mot. Br. Ex. E ("Indictment")], somehow that indictment is conclusive on the issue of whether Plaintiff represented harm to others and the doctrine of res judicata bars the Court from reaching a different conclusion. By definition an indictment is not a "final judgment on the merits" and therefore res judicata does not apply here. See United States v. 5 Unlabeled Boxes, 572 F.3d 169, 173 (3d Cir. 2009) (stating that res judicata requires a showing of a final judgment on the merits).

[6] Among Dr. Diorio's exhibits are a Vineland Police Report, a Vineland Emergency Medical Service Patient Report, Plaintiff's Emergency Department Record, an Emergency Room Report Continuation Sheet and a Restraint Order Form. [Def. Mot. Br. Ex. B-D, F.] These exhibits provide some evidence that Plaintiff "bit" Nurse Stavoli [Id. Ex. D at 2], and that Plaintiff "became aggressive, physically abusive and refused to cooperate" and that she was a "risk to self and others." [Id. Ex. F.] There is evidence that Plaintiff "ran out" of the emergency room into the parking lot and attempted "to hit and kick" the security guards that retrieved Plaintiff. [Id. Ex. G.] There is also evidence to contradict Plaintiff's assertion that she was calm throughout the process, including that she "scream[ed] no" in response to a request to provide a urine sample. [Id.]

in good faith and took reasonable steps to assess and detain Plaintiff such that he qualifies for the immunity under § 30:4-27.7.[7]

It is within the Court's discretion to consider matters outside the Complaint, when attached to a motion to dismiss. See Kulwicki, 969 F.2d at 1462; Garlanger v. Verbeke, 223 F. Supp. 2d 596, 606 n.4 (D.N.J. 2002) (stating that the decision to convert a motion to dismiss to a motion for summary judgment is discretionary and, if made, the plaintiff must be afforded adequate notice that the motion to dismiss will be considered under Rule 56, citing 5A Wright & Miller, Federal Practice & Procedure § 1366 (1990)). Here, Plaintiff has filed a motion to amend the Complaint. [Docket Item 28.] As explained below in Part IV.C, because the Court will afford Plaintiff the opportunity to file a renewed motion to amend the Complaint, the Court declines to convert the present motion to dismiss into a motion for summary judgment. The motion to dismiss the state-law claims therefore is denied without prejudice.

---

[7] The other statute referenced by Defendant Diorio, § 2A:62A-16, does not appear to be relevant to this case. That statute immunizes a doctor "from any civil liability for a patient's violent act against another person or against himself," but no claim has been asserted against Dr. Diorio for damages caused by a violent act of Plaintiff against herself or others. There is no allegation that Dr. Diorio failed to discharge his duty to warn and protect Plaintiff or a target of Plaintiff's violence. Rather, Plaintiff asserts that she was injured by Defendants and improperly detained or restrained.

14

### C. Plaintiff's motion to amend

Plaintiff has filed a motion to amend the Complaint and attached a proposed Amended Complaint that removes the NJSP as a defendant, consistent with this Court's previous opinion, and adds the allegation that Dr. Diorio acted under color of state law, among other changes. [Docket Item 41.] As explained supra, Part IV.A, neither Dr. Diorio, nor Nurse Stavoli, nor South Jersey Healthcare acted under color of state law, and amending any claims against those Defendants under § 1983 or the NJCRA would be futile. The Court is free to disregard conclusory labels in pleadings that are not accompanied by the factual grounds that support them. See Iqbal, 556 U.S. at 678 (stating that pleadings that are "no more than conclusions, are not entitled to the assumption of truth"). Therefore, Plaintiff's motion to amend will be denied without prejudice to file a new motion to amend, along with a proposed Amended Complaint that cures the pleading deficiencies noted in this Opinion as well as in the prior Opinion.[8]

---

[8] After briefing on this motion was complete, Defendants Vineland Police Department and Vineland EMS ("Vineland Defendants") filed a motion to dismiss. [Docket Item 43.] Plaintiff has not yet responded to that motion. Rather than withholding the present Opinion, the Court instead will order Plaintiff to refrain from filing any motion to amend, along with a proposed Amended Complaint, until after the Vineland Defendants' motion to dismiss is decided. As the accompanying Order will reflect, Plaintiff's deadline to file a motion to amend will be fourteen (14) days after the entry of the forthcoming opinion and order decided the Vineland Defendants'

**V.  Conclusion**

Defendant Diorio's motion to dismiss all claims against him under § 1983 and the NJCRA will be granted. Similarly, any claims against Defendants Stavoli or South Jersey Healthcare predicated upon them acting under color of state law are likewise dismissed.

Defendant Diorio's motion to dismiss tort claims against him arising under state law will be denied without prejudice, as will Plaintiff's motion to amend. The Court will grant Plaintiff leave to file a new motion to amend the Complaint, with a proposed Amended Complaint consistent with this Opinion and with the prior Opinion. Any motion to amend must be filed after the Court issues an opinion deciding the Vineland Defendants' motion to dismiss [Docket Item 43] and cure deficiencies identified in the Court's prior opinion and in this Opinion and those, if any, identified in the Court's forthcoming opinion. An accompanying Order will be entered.

| | |
|---|---|
| **March 11, 2013** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | Chief U.S. District Judge |

---

motion. Any motion to amend and proposed Amended Complaint must cure all pleading deficiencies noted in the Court's previous opinion, this Opinion and those, if any, in the Court's forthcoming opinion.